■ In the Matter of the Claim of KYLE KINDLON, Respondent. ALBANY MEDICAL COLLEGE, Appellant; LILLIAN ROBERTS,

as Commissioner of Labor, Respondent.—Harvey, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed October 29, 1984, which ruled that claimant was entitled to receive benefits.

Claimant, a financial systems clerk, voluntarily resigned the position which she had held with the employer for about two years. It is uncontroverted that claimant initially left the employer voluntarily for personal reasons. Her resignation was effective in January 1984. Prior to her resignation, the employer requested that she delay her actual termination until such time as she had trained the person hired to replace her. Claimant declined to do so but indicated a possible willingness to return on a temporary basis at some later date for that purpose.

Claimant did return to work for the employer for a one-week period in February 1984 for the purpose of training her replacement. She negotiated a salary with the employer which was higher than that which she was being paid at the time of her resignation. It was anticipated that she could adequately train the new employee in one week.

Claimant completed the training of her replacement in the one-week period. Thereafter, she filed for unemployment benefits and her initial application was approved. That decision was appealed by the employer and upheld by the Administrative Law Judge and the Unemployment Insurance Appeal Board. The employer appeals.

The Board found that Labor Law § 593 required a determination that claimant was eligible for unemployment benefits. That section, in pertinent part, provides: "No days of total unemployment shall be deemed to occur after a claimant's voluntary separation without good cause from his last employment prior to the filing of his claim until he has subsequently worked in employment on not less than three days in each of five weeks and earned remuneration at least equal to five times his weekly benefit rate" (§ 593 [1] [a]). The Board rejected the employer's position that claimant's temporary employment was so intertwined and interrelated to her voluntary termination that the two periods were essentially inseparable.

We find that the Board's decision in the instant case contravenes the basic intent and spirit of the Unemployment Insurance Law (see, Matter of Shanley [Catherwood], 27 AD2d 496, 498-499). Labor Law article 18 provides its own guideline for the "interpretation and application of this article" by setting

forth the declared public policy of the State with regard to unemployment compensation (Labor Law § 501). In setting forth the purpose and policy of the unemployment insurance program in the State, the statute expressly refers to *involuntary* unemployment as a public problem. In interpreting a statutory program or enactment, the courts must reasonably consider the general spirit and purpose of the enactment and the circumstances which prompted its creation. Ordinarily, the preferred construction is one which furthers the object, spirit and purpose behind the Legislature's enactment of the program (McKinney's Cons Laws of NY, Book 1, Statutes §§ 96, 124).

It is abundantly clear from the record that claimant's unemployed status at the time of her application was self-imposed and in no way involuntary. The one week she spent training her replacement was not inconsistent with her purpose of completely terminating her employment voluntarily. The reason claimant was unemployed at the end of the one-week period cannot be viewed in a vacuum. She had no employment at the end of that one week because she had already elected to quit her job and be replaced by someone else. She knew well that the training of her replacement was to be of very short duration. Such temporary activity for her former employer under the existing circumstances did not constitute a new period of employment for purposes of Labor Law § 593 *(Matter of Williams [Levine],* 51 AD2d 1094).

Any other result would give undue import to a hypertechnical construction of the Unemployment Insurance Law in a manner which would do a disservice not only to the employer, but also to the purpose intended by the Legislature when the program was enacted, i.e., to ease the burden created by involuntary unemployment *(Matter of Aquilina [New York Tel. Co.—Ross],* 62 AD2d 1096).

Decision reversed, without costs, and employer's objection to claimant's eligibility for benefits sustained. Mahoney, P. J., Weiss, Yesawich, Jr., Levine and Harvey, JJ., concur.